# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KYLE SPRING** <br> **(DOC# 555065)** | **CIVIL ACTION** |
| **VERSUS** | |
| **SECRETARY, LOUISIANA** <br> **DEPARTMENT OF CORRECTIONS,** <br> **ET AL** | **NO. 11-308-BAJ-CN** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, March 8, 2012.

*[signature]*

**MAGISTRATE JUDGE CHRISTINE NOLAND**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KYLE SPRING** (DOC# 555065) | **CIVIL ACTION** |
| **VERSUS** | |
| **SECRETARY, LOUISIANA DEPARTMENT OF CORRECTIONS, ET AL** | **NO. 11-308-BAJ-CN** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petition for writ of habeas corpus (R. Doc. 1) filed by Kyle Spring ("petitioner"). The State of Louisiana ("the State") has filed an opposition (R. Doc. 7) to petitioner's application.

## FACTUAL BACKGROUND

On November 17, 2006, at approximately 11:09 p.m., Robert "Bill" Franchuk, the victim, called the East Baton Rouge Parish Sheriff's Office and requested assistance at Slippery Pete's bar in Baton Rouge. The victim, a bouncer at Slippery Pete's, explained that there was a customer, who was subsequently identified as being the petitioner, who had been "starting trouble," and who had refused to leave the bar, despite having been asked several times to do so. The victim was told that a Sheriff's deputy would be dispatched to Slippery Pete's. At 11:15 p.m., the victim called the Sheriff's Office and cancelled the request for assistance because petitioner had left the establishment. At approximately 11:37 p.m., however, the victim called the Sheriff's Office once again and advised that petitioner had returned to the bar. The victim explained that petitioner had been expelled from the bar that night for starting a fight but had refused to stay away from

1

the bar.  The victim was again told that a deputy would be dispatched to the bar.

At 11:47 p.m., the victim called the Sheriff's Office back and cancelled the second request for assistance, explaining that petitioner had walked across the street to another bar and was no longer on the premises.  The victim placed a final call to the Sheriff's Office at 11:56 p.m., at which time he advised that petitioner was back at Slippery Pete's acting belligerently and was once again refusing to leave the premises.  While waiting for a deputy to arrive, the victim was fatally injured by a gunshot fired from a rifle by petitioner.

Shortly after the shooting, Detective Todd Morris ("Detective Morris") arrived at Slippery Pete's to investigate.  During his investigation, Detective Morris received petitioner's license plate number from an eyewitness to the incident, and with the assistance of petitioner's relatives, Detective Morris contacted petitioner by telephone. During that telephone conversation, Detective Morris asked petitioner to disclose his location and to surrender, in response to which petitioner replied, "Are you crazy? I am not doing that."  Petitioner then asked Detective Morris if the victim had died.  When Detective Morris indicated that he had not, petitioner said, "well, I shot him with a full metal jacket, it should have went straight through him."  Petitioner hung up without disclosing his location.

Petitioner was arrested the next morning and transported to the East Baton Rouge Parish Sheriff's Office for questioning.  He waived his right to remain silent and agreed to provide a video-recorded statement concerning the incident.  In the statement to Detective Morris, petitioner admitted to having patronized Slippery Pete's bar the night before, but he indicated that his recollection concerning the events leading up to, and immediately after, the shooting was limited.  Petitioner stated that he suffered from post-traumatic stress disorder and that he sometimes gets so angry that he "blacks out."  He also told Detective

Morris that he only recalled being pushed down in the parking lot of the bar and hitting his head, and in response, he became so angry that he "blacked out." Petitioner explained that the next event he recalled was driving on the interstate toward Hammond and receiving a call on his cell phone wherein the caller advised him that he had shot someone. During that phone call, petitioner did not admit or deny that he shot the victim.

## **PROCEDURAL BACKGROUND**

Subsequently, on February 8, 2007, petitioner was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1, in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. He pled not guilty to that charge and waived trial by a jury. Following a bench trial, the presiding trial judge found petitioner guilty as charged.[1] Petitioner filed a motion for "Post Verdict Judgment to a Lesser Included Responsive Offense or Acquittal" and a motion for new trial that was based upon purported newly discovered evidence, both of which motions were denied by the trial judge. He was sentenced on June 17, 2009 to life imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence. Petitioner appealed his conviction and sentence to the Louisiana First Circuit Court of Appeals,[2] which affirmed same on February

---

[1] By the time of trial, petitioner's recollection of the circumstances surrounding the shooting had allegedly improved. He testified that he fired the shot that killed the victim, but he claimed that the shooting was done in self-defense. He testified that he fired a single shot at the victim in response to the victim having pointed a pistol at him during a physical altercation in which petitioner was engaged with the victim's brother, Tom Franchuk. Petitioner further indicated that Tom Franchuk was the individual who pushed him down in the parking lot on the night of the shooting. The State's witnesses, however, testified that petitioner fired a single gunshot at the unarmed victim as the victim was moving backwards with his hands in the air.

[2] On appeal, petitioner raised two (2) issues: (1) that the evidence at trial was not sufficient to support a verdict of second degree murder, and in the alternative, that the court erred in not finding the mitigatory factors of La. R.S. 14:31(A)(1), manslaughter, sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection, existed by a preponderance of the evidence; and that the court erred in denying his motion for "Post

22, 2010. Petitioner applied for writs to the Louisiana Supreme Court, which application was denied on December 10, 2010.

On May 10, 2011, petitioner filed the present habeas petition, wherein he asserts the following two (2) claims:

> (1) Whether the newly discovered evidence presented in the Motion for New Trial, that of an eye witness to the event, would probably have produced an acquittal before a new trier of fact. Here, the Trial Court evaluated the new evidence as the 13th juror rather than, whether the new trier of fact would probably have reached a different result. The Trial Judge should have evaluated the newly discovered evidence, not retrospectively on its impact on its decision, but prospectively on consideration by a new fact finder [ ]. Such resulted in 5th, 6th and 14th Amendment to the U.S. Constitution denials regarding due process of law, deprivation of liberty without due process, and denial of a fair and impartial trial.
>
> (2) The Trial Court erred in barring corroborating, bolstering and supporting testimony of newly discovered witness Donald Russell, by Andy Tridico, supporting newly discovered witness, Donald Russell, was present at the location of the shooting at the time in question. The Trial Court refused to permit Tridico to testify at the Motion for New Trial, denying a full hearing on the said motion. Further, the Court of Appeal failed to rule on or consider such appealed issue [ ].

*See,* Petitioner's habeas application, pp. 5, 7. The State contends that both of petitioner's claims should be dismissed with prejudice because Claim No. 1 lacks merit and Claim No. 2 is procedurally barred.

---

Verdict Judgment to a Lesser Included Responsive Offense or Acquittal;" and (2) that the trial court abused its discretion, and/or erred in law, by denying the Motion for a New Trial based on newly discovery evidence, and not permitting testimony in support thereof. *See,* R. Vol. 8; *State v. Spring*, 2009-1687 (La. App. 1 Cir. 2/22/10), 2010 WL 624057, *1 .

4

## LAW & ANALYSIS

**I.    Claim No. 1:**

The State concedes that petitioner's first claim was previously adjudicated on the merits and exhausted in the state court system.  In order for this Court to grant an application for a writ of habeas corpus as to any claim that was previously adjudicated on the merits in state court, the Court must find that adjudication of such claim by the state courts:  (1) resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1) and (d)(2).  In addition, determinations of factual issues made by the state courts shall be presumed correct, unless particular statutory exceptions to 28 U.S.C. § 2254(d) are implicated, and the applicant has the burden of rebutting that "presumption of correctness" by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Collins*, 16 F.3d 626 (5th Cir. 1994).  Thus, the presumption of correctness is properly invoked if the petitioner fails to contend that any exceptions to §2254(d) are applicable to his case and if the Court finds that there were no defects in the state court's procedures.  *Id.* at 631.

In Claim No. 1, petitioner contends that the state trial judge denied him due process of law and a fair trial by denying his motion for a new trial, despite newly discovered evidence that was presented with such motion corroborating petitioner's trial testimony concerning the fact that, on the night in question, petitioner tried to leave the area, but Tom Franchuk forcefully pulled him out of his truck and continued beating him and also that the

5

victim pulled out a gun and threatened to shoot petitioner. Petitioner contends that, in deciding the new trial motion, the trial judge erroneously weighed the newly discovered evidence as if he were a jury considering guilt or innocence, instead of complying with his narrow duty in ruling upon such motion, which is to ascertain whether the alleged newly discovered evidence constitutes "new material fit for a new jury's judgment." *State v. Prudholm*, 446 So.2d 729, 736 (La. 1984).

At the hearing on the motion for new trial in state court, petitioner presented the testimony of Donald Russell ("Russell"). Russell testified that he was a customer at Slippery Pete's on the evening in question and that, at approximately midnight, a fight occurred toward the back of the bar. When Russell left the bar, he saw that the altercation was still occurring outside the bar. He testified that the victim told everyone to return to the inside of the bar, and according to Russell, he saw petitioner get "tackled" by another man while petitioner was arguing with the victim. Russell testified that the man threw petitioner onto the ground and started punching and kicking him, and the victim joined in and hit petitioner once or twice. Russell explained that petitioner attempted to run away but that the man who had initially "tackled" him ran after petitioner and began kicking and hitting petitioner again when petitioner fell down. Russell further testified that, while that was occurring, the victim, walked around the building, and petitioner ultimately attempted to get into his truck. Petitioner then pulled a rifle out of his truck and told the man who had been hitting him to back up. According to Russell, the man backed up slightly, and at that time, the victim appeared with a pistol and told petitioner, "if you don't put the gun down I am going to shoot you." Russell stated that the victim then proceeded to walk toward petitioner, threatening to shoot petitioner if he did not put his rifle down, and that petitioner

6

never walked toward the victim before petitioner fired the rifle at him.

Russell further testified that he left the bar immediately after the shooting happened because he had an outstanding warrant for his arrest and did not want to be present when the police arrived. He did not speak to anyone in connection with the investigation of the shooting. Russell explained that he had recently come into contact with the petitioner while they were housed on the same line in the parish prison.[3] He thought that petitioner looked familiar and subsequently learned that petitioner had been convicted for the shooting at Slippery Pete's. Russell testified that he advised petitioner that he was at the bar on the night of the shooting and that he later sent a letter to petitioner's attorney containing information about what Russell witnessed on the night in question. Finally, Russell testified that he had a conversation with petitioner after Russell sent that letter to petitioner's counsel in which petitioner indicated that he did not agree with all of the information that Russell provided in the letter, but Russell claimed he simply told petitioner's counsel what he observed on the night of the shooting. *See*, Transcript of Motion for New Trial, R. Vol. VII, pp. 1230-1275.

Following presentation of the above testimony by Russell, the trial judge denied petitioner's motion for a new trial, stating the following:

> Gentleman, I have had an opportunity to review the motions filed here. I obviously sat through the entire trial of this case. I have reviewed the law and, Mr. Bourland [petitioner's

---

[3] At the time Russell provided his testimony at the hearing on the new trial motion, he had two (2) felony charges (a drug charge and an attempted murder charge) pending against him. He had also pled guilty in the past to various charges, including three (3) counts of simple burglary, one (1) count of theft of a firearm, one (1) count of unauthorized entry of an inhabited dwelling, one (1) count of felony theft, one (1) count of simple burglary of an inhabited dwelling, one (1) count of forgery, one (1) count of simple battery, and one (1) count of second degree battery. This criminal history likely had an impact on the state trial judge's view of Russell's credibility.

> counsel], I agree with you, the law seems to indicate that the court should not be a judger of the credibility necessarily of a witness. It's the subject matter and whether or not there is new evidence that needs to be presented. In this case the court finds itself in a very unique position, because there wasn't a jury. And the court doesn't have to guess as to what the trier of fact might or might not have felt was important, or what might or might not have changed the opinion. The court was the person who made that decision. And I do think it is relevant in this situation for the court to be able to determine the credibility of this witness to make a determination as to whether or not that evidence would have changed the trier of fact who was me in this case. And after listening to the evidence of this witness and recalling in great detail what evidence was presented in the trial, this trier of fact believes that had this evidence been introduced at the trial that would have not changed this court's opinion and decision in this case. Therefore the motion for new trial is denied.

*See*, Transcript for Motion for New Trial, R. Vol. VII, pp. 1281-82.

The Louisiana First Circuit Court of Appeals considered this issue on direct appeal and affirmed the trial judge's conclusion, noting the following:

> In support of his claim that the trial judge erred in failing to only ascertain whether the new material was fit for a new trier of fact, the defendant cites *State v. Prudholm*, 446 So.2d 729 (La. 1984) and *State v. Smith*, 96-0961 (La. App. 1 Cir. 1997), 697 So.2d 39.
>
> Although there is language in these cases (both involving a new trial motion following a jury trial) that suggests the scope of the trial judge's duty on a motion for new trial based upon newly discovered evidence is limited to ascertaining whether there is new material fit for a new jury's judgment, the language of [La. Code Crim. P.] Article 851(3) also requires an evaluation of the effect of the newly discovered evidence.[4]

---

[4] La. Code Crim. P. Article 851(3) provides that a new trial shall be granted when "new and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty. La. Code. Crim. P. Article 851(3).

* * *

Thus, it is clear that the issue of whether new evidence is fit for a new jury cannot be considered in isolation. The question must be considered in light of the Article 851(3) provision that the new evidence would probably have changed the result of the first trial. The judge must evaluate the effect of the new evidence. *See, Watts*, 2000-0602 at p. 9, 835 So.2d at 449. "It is appropriate to be skeptical when newly discovered evidence is offered after a trial. Such evidence must be thoroughly and cautiously scrutinized." *Watts,* 2000-0602 at p. 14, 835 So.2d at 453.

In this case, the defendant cites *Prudholm* in support of his claim that the trial judge erred in considering the credibility of Russell's testimony. However, we note that, in upholding the denial of the motion for a new trial in *Prudholm*, the supreme court held that since there were no special circumstances which would suggest that the witness's recantation was "truthful," the trial judge, in deciding the new trial motion, reasonably could have concluded that the recantation would not have created a reasonable doubt of guilt in the mind of any reasonable juror. *Prudholm*, 446 So.2d at 736-37. Thus, the court acknowledged that the trial court was within its discretion in considering the credibility of the new evidence when evaluating its effect.

In *State v. Ybarzabal*, 180 La. 653, 157 So.379 (1934), the Louisiana Supreme Court considered the impact of newly discovered evidence in a motion for new trial after the defendant had been convicted in a bench trial. There, as in the instant case, the newly discovered evidence conflicted with other evidence introduced at trial, and the credibility of the newly discovered evidence had a significant impact on the court's decision on whether the new evidence was fit for a new trier of fact's judgment. After concluding there was nothing arbitrary or unreasonable in the judge's determination that the testimony of the two alleged newly discovered witnesses would not affect his judgment of the defendant's guilt, the court noted that, "A judge is allowed more discretion in that respect in a case that must be tried by him alone than in a case that is tried by a jury, because, on the hearing of a motion for a new trial, the judge knows whether the alleged newly discovered evidence would affect his judgment far better than he could know whether it would affect the verdict of a jury." *Ybarzabal*,

> 157 So. at 380.
>
> After a careful review of the record, we find no abuse of discretion in the trial court's denial of the defendant's motion for a new trial based upon newly discovered evidence. There was nothing arbitrary or unreasonable in the judge's concluding that the testimony of the newly discovered witness would not affect his judgment of the defendant's guilt, if a new trial should be granted. *Ybarzabal*, 157 So. at 380. While Russell's testimony would have corroborated the defendant's claim that the victim was armed with a weapon, the testimony also contradicted the defendant's own trial testimony and the testimony of all of the other state and defense eyewitnesses in a major way. At the hearing, Russell testified that the victim argued with the defendant and actively participated in beating the defendant. However, the defendant and everyone else who claimed to have witnessed the incident testified that the victim was not aggressive or confrontational with the defendant at any time that night. The defendant and others further testified that the victim was not involved in the physical altercation and he did not strike the defendant.
>
> Considering the foregoing, we find the defendant did not sustain his burden of showing that Russell's testimony would probably have produced a different result than a judgment of guilty at a new trial. The trial judge, who sat as the trier of fact in this case, heard the evidence on the motion for a new trial and specifically concluded that the evidence, if presented at the trial, would not have changed his judgment of guilty. The trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. [Citation omitted]. Considering all of the evidence presented at the hearing and taking into consideration the trial court's specific credibility determinations and the testimony presented at the trial, it was not shown that an injustice resulted from denial of the defendant's request for a new trial.

*See, State v. Spring*, 2009-1687 (La.App. 1 Cir. 2/22/10), 2010 WL 624057, *18-*19.[5]

---

[5] In a concurring opinion, First Circuit Judge Parro noted that, although he believed the trial judge erred in evaluating the new evidence from his own perspective as the trier of fact on the merits of the case, he nevertheless believed that, if the newly discovered evidence had been introduced at trial, it would not have changed the outcome of the case, considering the entirety of the evidence presented in the matter. *Id.*, at *19.

10

The clearly established federal law standard in this Circuit relative to the issue of whether a motion for new trial should be granted based upon newly discovered evidence is set forth in *Berry v. State*, 10 Ga. 511, 1851 WL 1405 (1851). Such standard is known as the *Berry* rule and has been recognized by the U.S. Fifth Circuit Court of Appeals as the applicable standard under the circumstances as recently as last year. *See, U.S. v. Piazza*, 647 F.3d 559 (5th Cir. 2011). Under the *Berry* rule, the four (4) elements that a defendant must show to obtain a new trial based upon newly discovered evidence are: (1) that the evidence is newly discovered and was unknown to him at the time of trial; (2) that the failure to discover the evidence was not due to his lack of diligence; (3) that the evidence is not merely cumulative, but is material; and (4) that the evidence would probably produce an acquittal." *U.S. v. Gutierrez*, 2007 WL 3026609 (W.D.Tex. 2007), quoting *U.S. v. Blackthorne,* 378 F.3d 449, 452 (5th Cir. 2004).

Thus, the standard for granting a new trial based upon newly discovered evidence under federal and state law is similar and requires a showing by the defendant that, if the new evidence had been presented at trial, it would probably have changed the verdict. Put another way, the pivotal consideration is whether, "if credited," the new evidence would probably bring about a different result. *U.S. v. McBride*, 463 F.2d 44 (5th Cir. 1972). Courts within and outside this circuit have recognized that, with regard to the final prong of the test for determining whether to grant a new criminal trial based upon newly discovered evidence (namely, that new evidence would probably produce an acquittal), the district court is required to make a credibility determination as part of its probability-of-acquittal inquiry, and in making that determination, the court should focus on whether the factfinder probably would reach a different result upon hearing the new evidence. *U.S. v. Lighty*, 616 F.3d 321

(4th Cir. 2010); *U.S. v. McCabe*, 2011 WL 1695114 (E.D.La. 2011), quoting *U.S. v. Grey Bear*, 116 F.3d 349, 350 (8th Cir. 1997)("It is the job of the district court, either on affidavits or after an evidentiary hearing . . . to decide whether the newly discovered evidence is credible . . . and, if so, whether it would probably produce an acquittal if a new trial were held").[6] [7]

Accordingly, in deciding whether the newly discovered testimony of Russell would probably have brought about a different result in petitioner's case, the state court trial judge had to consider the credibility of that testimony and determine whether such testimony, when weighed against the remainder of the evidence presented at trial, would have resulted in a different outcome such that a new trial was warranted, and by doing so, he did

---

[6] *See also, U.S. v. Kelly*, 539 F.3d 172, 189 (3rd Cir. 2008)("Having established that a district court is required to make a credibility determination as part of its probability-of-acquittal inquiry, we must next address the proper standard for making such a determination. [The defendant suggests that a district court's focus should be on whether a jury probably would reach a different result upon hearing the new evidence. We agree. . .To make a determination under this standard, the district court cannot view the proffered testimony in a vacuum; it must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the [factfinder] in the defendant's first trial"); *U.S. v. Woolfolk*, 197 F.3d 900 (7th Cir. 1999)("the judge[,] in determining credibility, . . . must look to all aspects of the witness including not only her testimony but the evidence presented at trial").

[7] In *McBride*, the Fifth Circuit explained that, in determining whether a new trial is warranted, the "critical consideration" is whether the new evidence would probably bring about a different result. The Fifth Circuit found, in that case, that the new evidence, "if credited, would certainly [have brought] about a different result." The newly discovered evidence consisted of a witness' recantation of prior testimony, and the Fifth Circuit noted that if such recantation was believed, it proved that coffee was seized without probable cause and that the defendant was unlawfully arrested. The Fifth Circuit noted that there was no testimony either at the suppression hearing in that case or at the trial refuting the witness' latest version of the arrest. The Fifth Circuit specifically noted that the district judge "should have resolved the question of which of Allemand's versions [was] true" and noted that if, on remand, the district judge chose to give credence to the later account, a new trial must be granted, while if the district judge chose on adequate grounds to believe the witness' original version, then the conviction must stand. *Id.*, at *52.

*McBride* makes clear that, in deciding a motion for new trial based upon newly discovered evidence and, thus, the probability that such newly discovered evidence would change the verdict, the district judge can examine the credibility of the newly discovered evidence and weigh it against the evidence that was produced at trial. Only if the district judge determines that the new evidence is credible enough to probably change the outcome of the case can the motion for new trial be granted.

12

not act contrary to (or unreasonably apply) clearly established federal law. Furthermore, the First Circuit's analysis and conclusions concerning the state trial judge's conduct is not a violation of federal law standards. Finally, petitioner has failed to come forward with any clear and convincing evidence or federal jurisprudence refuting the above federal cases and indicating that the state trial judge acted improperly in weighing the testimony of Russell against the evidence presented at trial in determining whether a new outcome was probable and, thus, whether a new trial was warranted. Accordingly, petitioner's Claim No. 1 should be dismissed with prejudice on the merits.

**II.     Claim No. 2:**

As mentioned above, the State contends that Claim No. 2 should be dismissed with prejudice because such claim is procedurally defaulted. The undersigned agrees. Pursuant to 28 U.S.C. §2254(b)(1)(A), an application for a writ of habeas corpus shall not be granted unless it appears that the applicant has exhausted the remedies available in the state courts as to each claim contained in his habeas application. 28 U.S.C. §2254(b)(1)(A). This exhaustion requirement is only satisfied when the substance of a federal habeas claim has been "fairly presented" to the highest state court. *Smith v. Quarterman*, 515 F.3d 392 (5th Cir. 2008)(The exhaustion of state court remedies requirement mandates that one petitioning for federal habeas relief from a state court conviction must have provided the highest court of the state with a fair opportunity to apply controlling federal constitutional principles to the same factual allegations, before a federal court may review any alleged errors). A review of petitioner's writ application to the

13

Louisiana Supreme Court indicates that he failed to raise this claim before that court.[8] Furthermore, petitioner concedes in his present habeas application that the First Circuit did not consider such issue when reviewing his direct appeal, and the undersigned's review of the First Circuit's opinion confirms same. Since the State has indicated, in its opposition, that it refuses to waive the "total-exhaustion rule" as to Claim No. 2, such claim should be dismissed with prejudice as procedurally barred from habeas review.

## RECOMMENDATION

For the above reasons, it is recommended that the petition for writ of habeas corpus (R. Doc. 1) filed by petitioner, Kyle Spring, should be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, March 8, 2012.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[8] In his writ application to the Louisiana Supreme Court, petitioner asserted the following two (2) assignments of error: (1) the trial judge erred when, in evaluating the impact of the newly discovered eye witness, Donald Russell, he judged whether Russell's evidence would have changed *his* verdict in this judge trial, as opposed to whether a new trier of fact, acting without the judgments already made by the judge, would probably reach a different verdict. The court of appeal erroneously approved that procedural ruling; and (2) the trial judge erred, as did the court of appeal, in concluding that the newly discovered eye witness evidence should not be heard by a new trier of fact.

14